IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DARRIN C.,[1]

     Plaintiff,

v.

     Case No. 3:21-CV-00012-NJR

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Social Security (SSI) benefits pursuant to 42 U.S.C. § 423.

### BACKGROUND

Plaintiff previously applied for DIB and SSI on April 5, 2016, alleging a disability onset beginning of September 17, 2014. (Tr. 111). The previous claims were denied initially on July 15, 2016, and again on reconsideration on October 17, 2016. On July 5, 2018, a hearing was conducted. (Tr. 37). After holding a hearing, an Administrative Law Judge (ALJ) denied the first application on November 20, 2018. (Tr. 124). For the first application, Plaintiff did not timely appeal the denial to the Appeals Council, making it final and binding. (Tr. 15).

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

Plaintiff applied a second time for DIB and SSI on November 30, 2018, alleging a disability onset date of November 30, 2018, and September 17, 2014, with respect to the SSI claim. (*Id*.). These claims were denied initially on May 6, 2019, and again on reconsideration on September 19, 2019. On July 14, 2020, a hearing was conducted. (Tr. 80). After holding a hearing, an ALJ denied the application on August 3, 2020. (Tr. 21-29). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review. (Tr. 1). Accordingly, Plaintiff exhausted administrative remedies and filed a timely complaint.

### ISSUES RAISED BY PLAINTIFF

Plaintiff raises the following issues:

1.    The ALJ failed to consider that Plaintiff was prescribed a medical assistive device.

2.    The ALJ used objectively faulty rationale in discounting the medical sources statement from Plaintiff's treating source.

3.    The ALJ improperly relied upon a prior ALJ decision where the claimant's non-attorney representative failed to update the record.

### LEGAL STANDARD

To qualify for DIB and SSI, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order:  (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his or her former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Accordingly, this Court is not tasked with determining whether or not Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken

into consideration, but this Court does *not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). While judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

## I.    Evidentiary Hearings

Plaintiff was first represented by a non-attorney at the hearing on July 5, 2018. (Tr. 37). Plaintiff explained he stopped working as a forklift driver because he was laid off around September 17, 2014—and would have worked the next day if he had not been laid off. (Tr. 42, 46-47). Plaintiff testified about his back pain, asthma, shoulder pain, seizures, and sleep apnea (Tr. 53, 62, 66, 67). Besides receiving a spinal cord stimulator implant on May 23, 2017, Plaintiff did not take medications to address the back pain. (Tr. 56-59). Plaintiff has problems showering, getting dressed, doing yardwork, and even sitting because of his back pain. (Tr. 69-71). Plaintiff also explained that he broke his left humerus bone and dislocated his left shoulder at the age of 14. (Tr. 62). Plaintiff was only doing physical therapy for his shoulder. (Tr. 64). As for his seizures, he experiences them every few months after he drinks excessively. (Tr. 66). For Plaintiff's sleep apnea, he only slept about two to three hours a night, but he did not use a machine. (Tr. 68, 70-71).

A vocational expert (VE) also testified. The ALJ asked him a hypothetical question which corresponded to the residual functional capacity (RFC) assessment—would there be light work for an individual with the same age, education, and work experience as Plaintiff. (Tr. 74). The VE testified that there are approximately 80,000 unskilled office helper positions nationally, approximately 120,000 light unskilled routing clerk positions nationally, and approximately 100,000 light unskilled packer positions nationally. (Tr. 75). The ALJ also asked the VE about the impact on the ability of the individual to perform these jobs if an individual can only occasionally reach overhead and behind the back with the "dominant right upper extremity." (Tr. 75). The VE testified that this would reduce the number of jobs to 40,000 for office helper positions, 60,000 for routing clerks, and 50,000 for packer jobs. (Tr. 76).

At his second hearing, on July 14, 2020, Plaintiff was represented by an attorney. (Tr. 83). Plaintiff explained that he last worked in March 2020 as a forklift operator. (Tr. 86). His main issues were his asthma, back, and shoulders. (Tr. 88). During this hearing, Plaintiff explained that he can be on his feet for about 10 to 15 minutes. (Tr. 89). There were no additional surgeries or treatment for his back pain. (Tr. 90).

Plaintiff explained that his right shoulder bothers him. (*Id*.). He testified that he met with a doctor one time regarding his right shoulder. (*Id*.). Plaintiff also noted that he has limited range of motion in both shoulders and is restricted from lifting anything over 10 pounds. (Tr. 91).

Besides his shoulders, Plaintiff explained that he uses a cane because of his back pain and the pain in his right leg. (*Id*.). Plaintiff explained that he does not live with

anybody right now because his mother passed away from COVID. (Tr. 93). Without his mother, he is having trouble keeping up with things. (*Id*.).

A VE also testified at this hearing. The ALJ asked him a hypothetical question which corresponded to the RFC assessment—would there be light work for an individual with the same age, education, and work experience as Plaintiff. (Tr. 96). The VE testified that there are approximately 3,200 unskilled counter clerk positions nationally, approximately 105,000 light unskilled furniture rental clerk positions nationally, and approximately 15,000 light unskilled investigator dealer account or floor plan adjuster positions nationally. (Tr. 96-97). The ALJ also asked the VE about the impact on the ability of the individual to perform these jobs if an individual cannot crawl; cannot climb ladders, ropes, scaffolds; occasionally balance, stoop, kneel, crouch, climb ramps and stairs, push, pull, and reach overhead and in other directions with the right upper extremity. (Tr. 98). The VE confirmed that the individual could still perform these jobs with those limitations. (*Id*.).

## II.    Relevant Medical Records

On November 15, 2017, Plaintiff saw Meena Murugappan, M.D. ("Dr. Murugappan") complaining about a persistent cough and oral thrush. (Tr. 689). Dr Murugappan reported that Plaintiff's gait was normal and there was normal movement of extremities. (Tr. 692). On November 30, 2017, Plaintiff saw Haley Bray, M.D. ("Dr. Bray") for his persistent cough. (Tr. 413). Dr. Bray reported that Plaintiff "moves all extremities well." (Tr. 414). On December 21, 2017, Plaintiff saw Yusuf Agamawi, M.D. ("Dr. Agamawi) for nasal congestion and his persistent cough. (Tr. 410). During the visit,

Dr. Agamawi noted that "[p]atient is otherwise doing well" and "moves all extremities well." (Tr. 410-412). In January 2018, Plaintiff's gait was normal. (Tr. 701, 710).

On February 15, 2018, Plaintiff saw Anthony Truong D.O. ("Dr. Truong") to "*fill out disability parking placard form*." (Tr. 713) (emphasis added). Plaintiff complained that he "*has pain with walking [greater than] 200 yards*." (*Id*.) (emphasis added). Later that month, on February 21, 2018, Richard Derby, M.D. ("Dr. Derby") reported that Plaintiff's gait was normal. (Tr. 719). In March 2018, Plaintiff saw Joseph Brunworth, M.D. ("Dr. Brunworth") for nasal obstruction and his persistent cough. During this visit, Dr. Brunworth observed that Plaintiff "moves all extremities well." (Tr. 409).

In April 2018, Yi Pan, M.D. ("Dr. Pan") noted that Plaintiff's back pain is "well controlled, but he has intermittent leg kerking." (Tr. 401, 405-406, 439, 441). During Dr. Pan's exam, he noted that gait was "normal, tandem walk stable, Romberg negative." (Tr. 407). In May 2018, Dr. Murugappan noted that Plaintiff's gait was normal and his extremities had normal movement. (Tr. 728). Then in June 2018, Dr. Bray noted that Plaintiff was able to move all extremities well. (Tr. 405).

In July 2018, Plaintiff saw James Wade, M.D. ("Dr. Wade") for the first time to "establish care, discuss meds, and discuss disability due to asthma and back issues." (Tr. 546). During the examination, Dr. Wade noted that Plaintiff's back was normal and full range of motion. (Tr. 547). Dr. Wade's exam also revealed no issues with Plaintiff's extremities and his musculoskeletal was "grossly normal, with appropriate ROM and muscle strength." (*Id*.).

On November 1, 2018, Plaintiff saw Dr. Wade to get "*paper work done*." (Tr. 539)

(emphasis added). Plaintiff stated that he was unable to walk any distance due to the pain and he requires a cane to walk. (*Id*.). After this appointment, on November 6, 2018, Swetaben Patel, APRN-CNP ("Patel") noted that Plaintiff was "doing well." (Tr. 471). Patel observed that Plaintiff walked with a cane. (Tr. 402, 473). On November 15, 2018, Dr. Brunworth noted during the physical exam that Plaintiff "moves all extremities well." (Tr. 400).

On November 27, 2018, Plaintiff saw Dr. Wade to discuss his "back pain, [ ] pain medication, *lawyer* and CT results." (Tr. 536) (emphasis added). During this appointment, Plaintiff was prescribed two medications for his back pain and referred to a specialist for his bulging lumbar disc. (Tr. 537). In December 2018, Dr. Wade prescribed a cane for Plaintiff to be used for 90 days. (Tr. 534). By March 2019, Dr. Feinerman noted that Plaintiff could ambulate 50 feet without an assistive device. (Tr. 574-581). A month later, in April 2019, Dr. Deppe observed that "[Plaintiff's] gait was somewhat slowed and deliberate; however, his posture was within normal limits." (Tr. 588).

On April 24, 2019, Dr. Truong noted Plaintiff had "[n]ormal range of motion." (Tr. 760). In early June 2019, Plaintiff explained to Tara Helfrich, N.P. ("Helfrich") that he was "[o]verall feeling great other than known low back chronic pain and shoulder pain." (Tr. 776). Helfrich noted Plaintiff had a normal range of motion and exhibits no edema, tenderness, or deformity. (Tr. 780). By late June 2019, Plaintiff also had normal range of motion, exhibited no edema, tenderness, or deformity, and his gait and coordination were normal. (Tr. 800).

On July 16, 2019, Dr. Mattei, neurosurgeon, conducted a physical examination on Plaintiff. (Tr. 825). During the exam, he noted that Plaintiff seemed to be in mild discomfort, but in no acute distress. (*Id.*). Dr. Mattei reported that Plaintiff "has questionable straight leg raise test on the right side with pain radiating to the right S1 dermatome, negative on the left side." (*Id.*). But overall, Dr. Mattei noted that "[r]eflexes are physiologic and symmetric at 1+ in the lower limbs." (*Id.*).

On October 25, 2019, Dr. Tikku George, M.D. ("Dr. George") noted Plaintiff no longer had pain radiating to his legs and *was not using a cane for ambulation*. (Tr. 839-840) (emphasis added). Plaintiff also told Dr. George that he "plan[ned] to return to work soon, either office position or as forklift driver." (*Id.*). On January 31, 2020, Dr. Truong observed that Plaintiff's range of motion was normal. (Tr. 918). On February 26, 2020, Plaintiff saw Marc McCleary, M.D. ("Dr. McCleary") for back and neck pain. (Tr. 901). (*Id.*). Plaintiff noted that he exercised and Dr. McCleary did not record observing a walker. (Tr. 904). Plaintiff's range of motion was normal. (Tr. 905).

### III.   State Agency Consultants' Opinions

In April 2019, Lenore Gonzalez M.D. ("Dr. Gonzalez") assessed Plaintiff's RFC based on a review of the record. Dr. Gonzalez concluded that Plaintiff could do light work. (Tr. 142). Besides Dr. Gonzalez, M.W. DiFonso, Psy.D. ("DiFonso") noted no mental medically determinable impairment. (Tr. 137).

In August 2019 and September 2019, a second state agency consultant, James Madison, M.D. ("Dr. Madison") reviewed the record. Dr. Madison concluded that Plaintiff could do light work (Tr. 175-193). Besides Dr. Madison, Craig Brown, Ed. D.

("Brown") noted no mental medically determinable impairments established. (Tr. 170, 188).

**DECISIONS OF THE ALJ**

The ALJ followed the five-step analytical framework process for determining whether an individual is disabled. The ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 30, 2018, the alleged onset date. (Tr. 18). The ALJ also found that Plaintiff had severe impairments such as degenerative disc disease, degenerative joint disease, asthma, epilepsy, and obesity. (*Id*.)

The ALJ found that Plaintiff has the RFC to perform light work, except Plaintiff cannot crawl, climb ladders, ropes, or scaffolds. (Tr. 21). In addition, Plaintiff can occasionally balance, stoop, kneel, crouch, climb ramps or stairs, push or pull, and reach overhead and behind his back with his upper right extremity. (*Id*.). However, Plaintiff should avoid concentrated exposure to extreme heat and cold, humidity, pulmonary irritants, and hazards. (*Id*.). The ALJ also found that Plaintiff is unable to perform any past relevant work. (Tr. 27). In conclusion, based on the VE's testimony, the ALJ found that Plaintiff was not disabled because considering his age, education, work experience, and RFC, Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (Tr. 29).

**DISCUSSION**

## I.     Failing to Consider the Medical Assistive Device

Plaintiff contends that the ALJ "failed to consider that [Plaintiff] was prescribed a hand held medical assistive device." (Doc. 22, p. 5). Plaintiff argues that "[t]he ALJ

ignores the records showing worsening spinal conditions, receiving pain shots, receiving new oral pain medication, having a positive straight leg raise, and expressly being prescribed a cane." (*Id*. at p. 6). According to Plaintiff, "[t]his is an example of impermissible cherry picking of evidence." (*Id*.). Plaintiff also accuses the ALJ of playing doctor because the ALJ states "the claimant is not documented to have a chronically altered gait or ever documented to be unable to ambulate effectively without an assistive device as would reasonably support a conclusion that the claimant requires the use of a cane for ambulation and standing." *(Id*. at pp. 6-7). Plaintiff concludes, "[a]n ALJ is certainly not in a better position than a claimant's treating physician to determine whether or not a cane is necessary." (*Id*. at p. 7).

These arguments are not alleging that the ALJ "played doctor," Instead, Plaintiff is asking the Court to reweigh the evidence. But Plaintiff fails to cite to any evidence supporting his claim that the ALJ played doctor. After analyzing the record, the ALJ not only noted that Plaintiff does not have documentation for his chronically altered gait, but also the ALJ explains in great detail why Dr. Wade's opinion is unpersuasive, noting the following:

> He identified no specific pain behavior (e.g., grimacing, wincing, groaning) or motor, sensory, reflex, or strength deficits. He also made no change to the claimant's medication regimen on that date. (Exhibit B5F/1-2). The medical signs and treatment documented in that note do not reasonably supportive Dr. Wade's opinion. That is, there is no logical nexus between the clinical findings observed and treatment prescribed by the treatment provider and his opinion. Additionally, he did not include a sufficient explanation that reconciles the discrepancies between the clinical findings and the opinion, or that otherwise creates a logical bridge between the medical evidence and the opinion. In support of his opinion, the only objective medical evidence Dr. Wade cited was 2014 evidence of a bulging

disc with spinal canal comprise, which predates the alleged onset date of disability by approximately four years. Otherwise, he only cited to the claimant's diagnoses and subjective complaints. *He identified no medical signs that support his conclusions. Therefore, the opinion is unsupported. Second, the opinion is not consistent with the broader case record. As has already been discussed above, the record simply does not document clinical abnormalities or treatment reasonably supportive of the degree of limitation alleged by the claimant or assessed by Dr. Wade. Indeed, the only abnormality consistently present has been the claimant's obese body habitus. Because the opinion of the claimant's own treatment provider is not supported by or consistent with the medical and non-medical evidence of record, the undersigned finds it to be unpersuasive.*

(Tr. 26) (emphasis added).

Here, Plaintiff filed his claim in 2018. Thus, the ALJ was required to evaluate the medical opinion evidence under 20 C.F.R. § 404.1520c which applies to claims filed on or after March 27, 2017. Under this regulation, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." *Id.* An ALJ is required to articulate "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." *Id.* When evaluating medical opinions, 20 C.F.R. § 404.1520c lists out factors for ALJ's to consider including: supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. *Id.* "An ALJ's decision must explain how she considered the factors of *supportability* and *consistency*, but she is not required to explain how she evaluated the other factors." *Josefina T. v. Kijakazi*, 2022 WL 2669523, at *3 (N.D. Ill. July 11, 2022) (citing 20 C.F.R. § 404.1520c(b)(2)) (emphasis added). Because the ALJ

neither played doctor nor cherry picked evidence—but instead followed 20 C.F.R. § 404.1520c—his decision must be upheld.

## II. Using Objectively Faulty Rationale in Discounting the Medical Source Statement

Plaintiff attempts to argue that the ALJ's analysis of Dr. Wade was "objectively incorrect." (Doc. 22, p. 8). The Court disagrees. First, Plaintiff argues that "[t]he ALJ states that 'on the date he rendered his opinion the only abnormality noted was lumbar back pain.'" (*Id*.). Plaintiff then notes, but "[o]n this date, Dr. Wade prescribed a cane." (*Id*.). A cane is not an abnormality. Also, there is a difference between prescribing and observing. This argument does not prove the ALJ's analysis was faulty.

Second, Plaintiff calls the ALJ's statement that there were no notes of grimacing, wincing, or groaning—"simply odd." (Doc. 22, p. 8). It does not matter if Plaintiff thinks the ALJ's statement is odd because the ALJ's statement is still correct. There are no notes of grimacing, wincing, or groaning. The fact that "[t]here is no authority requiring the words 'grimacing, wincing, or groaning' when determining a residual functional capacity" is immaterial. The ALJ is required only to "minimally articulate" his or her reasons for accepting or rejecting evidence. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). Here, the ALJ met this "lax" standard because the reason he gave for the weight he assigned to the opinions were supported by the record, and the ALJ took into consideration the regulatory factors.

Third, Plaintiff calls the ALJ's statement that there were no medication changes on the date of the opinion nonsensical. (Doc. 22, p. 8). Plaintiff then notes that "Dr. Wade

prescribed the claimant two new pain meds and gave the claimant two anti-inflammatory injections on the prior visit of 11/27/2018." (*Id.* at pp. 8-9). The problem with Plaintiff's argument is the ALJ is not wrong. The ALJ correctly observed that Dr. Wade made no change to Plaintiff's medication regimen on December 27, 2018. The significance of not changing medication on that date is simple. Not changing pain medication shows that the medication was effective or supports the notion that Plaintiff's pain was not worsening to the point where he needed more pain medication.

Fourth, to the extent the ALJ thought Dr. Wade was citing 2014 imaging, any mistake was harmless at worst. In fact, if the ALJ simply relied on Dr. Wade's findings, then this mistake would be serious—but the ALJ went well beyond Dr. Wade's findings.

Fifth, Plaintiff argues that "[t]he ALJ states that the claimant's bodily habitus is the only abnormality that is consistently present[,] . . . [but] [then] the ALJ [found] four severe medical impairments other than obesity[.]" (Doc. 22, p. 9). Plaintiff did not go into detail whether the four severe medical impairments were consistently present. Plaintiff did not explain whether the four severe medical impairments were abnormalities. Plaintiff did not attack the ALJ's ultimate conclusion that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 19). The Court rejects this argument.

Sixth, Plaintiff repeats himself concluding that "[t]he ALJ impermissibly played doctor and cherry picked evidence unfavorable to the claimant while ignoring evidence that supported a finding of disability." (Doc. 22, p. 9). The Court already rejected this

argument.

### III.   Improperly Relying Upon a Prior ALJ Decision where the Claimant's Non-Attorney Representative Failed to Update the Record

The ALJ properly relied upon the prior ALJ decision—and conducted his own review of the evidence. "Plaintiff put his condition in the preceding years at issue by claiming that he had been disabled since 2014." (Doc. 27, p. 12). The Court agrees that "it was reasonable for the ALJ to note the final and binding November 20, 2018 ALJ decision finding Plaintiff not disabled." (*Id.* at p. 13). As noted by the Commissioner, the record did not show a significant decline in Plaintiff's condition following the first ALJ's decision. To uncover the lack of decline in Plaintiff's condition, the ALJ conducted a *de novo* review of the evidence—"including evidence that predated Plaintiff's alleged onset of disability with respect to his DIB claim and predated his SSI application." (*Id.*).

While Plaintiff was previously represented by a non-attorney who failed to update the record, Plaintiff is not contending that the prior ALJ erred by failing to "qualify" the non-attorney representative. Plaintiff is also not contending that the prior ALJ failed to obtain a valid waiver of counsel when he allowed Plaintiff to proceed with Mr. Bueltemann. *See Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994) (citing 42 U.S.C. § 406; 20 C.F.R. § 404.1700) ("[a] claimant has a statutory right to counsel at a disability hearing"). In fact, Plaintiff cannot challenge the prior ALJ's decision because Plaintiff did not timely appeal the denial by filing a Request for Review of Appeals Council. (Tr. 15).[2]

---

[2] Notably, the ALJ's duty to develop the record "is enhanced when a claimant appears without counsel; then the ALJ must scrupulously and conscientiously [ ] probe into, inquire of, and explore for all relevant facts." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (internal quotes

Most importantly, the medical records from Dr. Brunworth, Dr. Pan, Dr. Truong, Dr. Weimer, and Dr. Oragampe do not help Plaintiff's case. Plaintiff points out that "[t]he exhibit list from the [prior] decision indicates that the newest medical evidence of record was dated May 30, 2018 when the hearing decision was issued on November 20, 2018." (Doc. 22, p. 10). Plaintiff continues "argu[ing] that the prior denial should not present an uphill battle for the claimant when considering disability after November 20, 2018." (*Id*.). The problem is the recent ALJ decision still relied on medical evidence well past May 30, 2018—and the medical evidence after that date does not help Plaintiff's case. (Tr. 34).

CONCLUSION

After careful review of the record as a whole, the Court finds that ALJ committed no errors of law, and his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**, and this action is **DISMISSED with prejudice**.

The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:  July 25, 2022**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

---

and citation omitted). The reason is simple. A non-attorney representative—like Mr. Bueltemann—"'lacks the training of an attorney and is not a substitute for an attorney.'" *Mar. v. Colvin*, 2016 WL 4154682, at *3 (N.D. Ill. Aug. 3, 2016) (quoting *Watkins v. Colvin*, 2014 WL 683849, at *9 (N.D. Ind. Feb. 21, 2014)). Frustratingly, the ALJ referred to Mr. Bueltemann as "counsel" numerous times during the hearing—and Mr. Bueltemann never corrected the ALJ. Mr. Bueltemann was not an attorney.